### IN THE UNITED STATES DISTRICT COURT FOR THE
### SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| MORAN FOODS, LLC d/b/a Save-A-Lot, Ltd.,<br><br>    Plaintiff,<br><br> v.<br><br>SUNSHINE STORES, LLC,<br><br>and<br><br>MUHAMMAD BABAR CHAUDHRY,<br><br>    Defendants. | Case No. 2:24-cv-04080<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Moran Foods, LLC d/b/a Save-A-Lot, Ltd. ("Plaintiff" or "SAL"), by and through its undersigned counsel, brings this Complaint against Defendants Sunshine Stores, LLC ("Sunshine" or "Licensee") and Muhammad Babar Chaudhry ("Chaudhry") (collectively, "Defendants"), and in support thereof, alleges the following:

### NATURE OF THIS ACTION

1. This is an action for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a), deceptive trade practices under Ohio Revised Code § 4165.02, unfair competition and trademark infringement under Ohio common law.

2. SAL owns certain trademarks, service marks, copyrights, and logos (collectively, the "SAL IP") for use in connection with the operation of grocery stores branded as SAL and private label products sold in SAL-branded grocery stores.

3. SAL licenses the SAL IP to licensees who operate SAL stores around the country.

4.  In addition to providing licensees with permission to use the SAL IP, licensees are also given access to various programs, procedures, systems, and products developed by SAL (the "SAL Program") and access to purchase certain grocery products, including SAL's private label products (the "SAL Inventory").

5.  Licensee entered into three different license and supply agreements (the "LSAs") with SAL that govern thirty-three (33) stores throughout Ohio, Indiana, and Pennsylvania (the "Stores").

6.  Under the LSAs, Licensee agreed to continuously operate the Stores as SAL-branded grocery stores and to purchase inventory from SAL for a five-year term (the "Term") that would renew automatically.

7.  Chaudhry is the Owner of and Sole Member of Licensee and signed three separate LSAs with SAL on Licensee's behalf.

8.  Two key features of the LSAs were that: (a) SAL granted Licensee a nonexclusive license during the term of the LSAs to use the SAL IP to operate a hard discount, limited assortment grocery store at the Stores; and (b) Licensee was obligated to purchase and sell certain food and non-food products that included SAL's exclusive, private label products, including certain trademarked private label products.

9.  The LSAs also included a non-compete provision under which Licensee, Chaudhry, and Licensee's key officers, directors, and management personnel agreed not to directly or indirectly engage in, or have an interest in, a competing limited assortment store or directly or indirectly sell the Stores' assets to a competitor of SAL without SAL's prior written consent.

10. Under the LSAs, the failure of Licensee to operate the Stores as SAL-branded grocery stores and to continue to purchase inventory from SAL constitute material breaches of the LSAs.

11. Further, the LSAs contained clear and unambiguous requirements governing termination and the closure of the Store with which Licensee has not complied. These requirements were important to SAL and provided benefits to SAL that it has been deprived of, including, for example, the exclusive right of first refusal and the option to purchase all or a portion of the assets of the Store.

12. Upon information and belief, Defendants have stopped operating nearly all the Stores as SAL-branded grocery stores (the "De-Branded Stores").

13. Upon information and belief, Defendants are operating the De-Branded Stores as a competing limited assortment store.

14. In violating the LSAs, Defendants have also failed to properly de-brand the Stores and without SAL's permission, have: (1) offered for sale, and have in fact sold, products bearing SAL's registered trademarks at a retail location that bears the name "Value Foods Market"; (2) continued to use SAL's registered trademarks, service marks, copyrights, and/or trade dress in the De-Branded Stores, including on equipment such as shopping carts and on other food and non-food products; and (3) continued to serve ads on SAL's website and through other digital channels that contain SAL's trademarks, service marks, copyrights, and/or trade dress for the De-Branded Stores and for SAL's private label products sold in the De-Branded Stores.

15. Upon information and belief, Defendants have also violated the LSAs by purchasing inventory from wholesalers other than SAL.

16.     Defendants' conduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of consumers and SAL.

17.     As a result of Defendants' actions, SAL is also suffering a loss of goodwill that it has created in its intellectual property, including trademarks and service marks.  This action seeks preliminary and permanent injunctive relief and damages for Defendants' trademark infringement, unfair competition, and breaches of the LSAs.

18.     SAL seeks injunctive relief and monetary damages for Defendants' trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1051, *et seq*. and state law claims arising from Defendants' infringing conduct resulting from Defendants' material breaches of the license and supply agreements between Licensee and SAL.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over SAL's claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

20.     This Court has supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1367 because these claims are so closely related to the federal claims that they form a single case or controversy under Article III of the United States Constitution.

21.     Upon information and belief, this Court has personal jurisdiction over Chaudhry because he is a citizen of Ohio, residing within this judicial district. This Court has personal jurisdiction over Sunshine because it does substantial business in Ohio, has a principal place of business and/or retail locations in Ohio, and is registered as an Ohio entity.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to SAL's claims has occurred and/or is occurring in this District, and Defendants are subject to personal jurisdiction in this District.

## THE PARTIES

23.     Plaintiff SAL is a limited liability company organized and existing under the laws of the State of Missouri with its principal place of business in Saint Ann, Missouri.

24.     Defendant Sunshine is an Ohio limited liability company that operated and continues to operate the Stores and that has a principal place of business at 2345 Southwest Blvd., Grove City, OH 43123.

25.     Upon information and belief, Defendant Chaudhry is an individual resident of Ohio. Chaudhry is the Owner and Sole Member of Licensee.

## FACTS

### Background of SAL

26.     SAL is a discount grocery chain that offers store licensing opportunities for independent retailers to operate stores under the SAL brand with the support of SAL's supply and distribution network through which it sells branded food and non-food products.

27.     Since its founding in 1977, SAL has grown to become a large discount grocery store chain, having hundreds of stores throughout the United States and billions of dollars in sales.

28.     Due to its long-standing presence as a discount grocery store, SAL has become well-known and respected in the discount grocery retail industry.

29.     SAL's private label products, which are sold under their registered marks, are available for sale in SAL retail stores across the United States.

**The License and Supply Agreements**

30.     On May 13, 2021, SAL and Licensee entered into an LSA governing eleven (11) locations in Ohio (the "Original LSA"). A true and accurate copy of the Original LSA is attached hereto and incorporated by reference as **Exhibit A**.

31.     On May 14, 2021, SAL and Licensee entered into the First Amended and Restated LSA (the "First Amended LSA") which contained the same terms as the Original LSA but governed twenty (20) store locations in Ohio in Exhibit A to the First Amended LSA. A true and accurate copy of the First Amended LSA is attached hereto and incorporated by reference as **Exhibit B**.

32.     On May 17, 2021, SAL and Licensee entered into the Second Amended and Restated LSA (the "Second Amended LSA") which contained the same terms as the Original and First Amended LSAs but governed twenty-six (26) store locations in Ohio and Indiana in Exhibit A to the Second Amended LSA. A true and accurate copy of the Second Amended LSA is attached hereto and incorporated by reference as **Exhibit C**.

33.     On December 23, 2021, SAL and Licensee entered into an LSA governing several additional locations in Ohio and Indiana (the "Second LSA"). A true and accurate copy of the Second LSA is attached hereto and incorporated by reference as **Exhibit D**.

34.     On March 28, 2023, SAL and Licensee entered into another LSA that contained the same terms as the other LSAs but governed two new locations in Erie, Pennsylvania (the "Third LSA"). A true and accurate copy of the Third LSA is attached hereto and incorporated by reference as **Exhibit E**.

35.     The Original, First Amended, and Second Amended LSAs, the Second LSA, and the Third LSA are collectively referred to as the "LSAs."

36.     Chaudhry signed the LSAs on behalf of Licensee as its Owner and Sole Member. Chaudhry also acknowledged that he executed the LSAs to evidence his intent to be bound by them.

37.     The initial term of the LSAs was for five (5) years, during which period Licensee agreed to "continuously operate the Stores at the Premises as a Save-A-Lot hard discount, limited assortment grocery store under the Save-A-Lot Program in accordance with the Program Standards."  Exhibits A–E at § 6(a).

38.     The license automatically renewed for four (4) additional terms of five (5) years each unless Licensee provided SAL with written notice of its intention not to renew the license no less than 180 days prior to the expiration of the initial term or any renewal term.  *Id*. at § 6(a).

39.     The LSA references the SAL IP and explains that SAL develops, controls, and uses the SAL IP in order to identify to the public the source of services and products marketed under them and to represent the high standards of quality, designs, and specifications associated with the SAL IP.

40.     Pursuant to Section 1 of the LSA, SAL granted Sunshine, as Licensee, a "nonexclusive, revocable, non-transferable, non-assignable, non-sublicensable license during the term of the Agreement to use the mark SAVE-A-LOT and other such marks as the parties may agree . . . to operate hard discount, limited assortment grocery stores" at specific locations.  *Id*. at § 1.

41.     In Section 3 of the LSA, Licensee acknowledged the SAL IP is SAL's exclusive property, acknowledged the value associated with the Marks, and agreed not to "take or cause to be taken any action which would impair or tend to impair [SAL's] rights in the Marks."  *Id*. at § 3.

42.     Pursuant to Section 11 of the LSA, Licensee has granted SAL a security interest in and to any and all present and future right, title and interest in all of the real property and other assets and rights of Licensee arising in connection with the Store, including Licensee's leases, under the Uniform Commercial Code as adopted in the State of Missouri to secure all obligations and amounts owing or to become due and owing by Licensee to SAL.

43.     In the event Licensee chose to cease operating any Store for any reason, under Section 8(a) of the LSAs, SAL had the option to purchase the assets of such Store prior to the occurrence of certain events, including but not limited to the following (each an "Option Event"):

    a.  Licensee's desire to sell, offer to sell, or attempt to sell all or substantially all of the assets or equipment of any Store, including without limitation any inventory or the leasehold interest;

    b.  Licensee's cessation of operations at the Store;

    c.  Licensee's conversion of the Store to a format other than the SAL Program;

    d.  The termination, cancellation, or non-renewal of the Agreement; or

    e.  The abandonment or deemed abandonment of the license granted in the LSA.

44.     The LSA required Licensee to provide ninety (90) days written notice to SAL if it decided to cease operating any Store or was considering an opportunity to sell the Assets. *Id*. at § 8(b).

45.     In addition, Licensee was obligated to notify SAL in writing of any Option Event, which would automatically trigger SAL's exclusive option to purchase the Assets of the Store. *Id*. at LSA § 9.

46.     Licensee also agreed that in the event it closed the Store, it would pay SAL all amounts owing and pay SAL's reasonable attorneys' fees if it became necessary for SAL to hire an attorney to enforce any of SAL's rights or Licensee's obligations arising out of the SAL. *Id*. at § 6(c)(i)–(ii).

47.     In addition, Licensee agreed to cease all use of, by advertising or otherwise, SAL IP and to de-brand the Stores by removing any signage, décor, and color scheme associated with SAL.  *Id*. at § 6(c)(iii).

48.     Section 10 of the LSA set forth a non-compete provision under which Licensee and its key officers, directors, and management personnel (the "Restricted Group") agreed not to directly or indirectly engage in or have an interest in a competing limited assortment store or directly or indirectly sell the Store assets to a competitor of SAL without SAL's prior written consent during the Term of the LSA or for one (1) year following the LSA's termination (the "Non-Compete").  *Id*. at § 10.

49.     In Section 10(c) of the LSA, Licensee "covenants and agrees not to, directly or indirectly, sell the Assets of the Store(s) or the Real Property to a competitor of Licensor that operates a Limited Assortment Store without the prior written consent of Licensor."  *Id*. at § 10.

### Defendants' Breaches of the LSA and Infringing Conduct

50.     As referenced above, Section 10 of the LSAs contain a Non-Compete.  More specifically, in Section 10(b), members of the Restricted Group agreed not to "directly or indirectly or on behalf of or in conjunction with any other person, persons, partnership or corporation, own, maintain, engage in, or have an interest in the operation of a Limited Assortment Store which is supplied by any wholesale supplier other than [SAL]" during the Term of the LSAs.  *Id*. at § 10(b).

51.     Members of the Restricted Group are obligated to uphold the same promises for one (1) year following the expiration or termination of the LSA.  *Id*. at § 10(c).

52.     In the signature pages to the LSA, Chaudhry acknowledged that he is a member of the Restricted Group as defined in the LSAs.

53.     Under the LSA, the failure of Licensee to continuously operate the Stores and to continue to purchase inventory from SAL constitutes material breaches of the LSA.

54.     Upon information and belief, on or about October 9, 2024, Defendants renamed several of the Stores "Value Foods Market" and began operating them as something other than SAL stores in violation of the LSAs, federal and state trademark and unfair competition laws, and the Non-Compete.

55.     Defendants shoddily hung signs with the name "Value Foods Market" over exterior store signs that previously said "Save-A-Lot," but failed to fully cover the old signs, meaning that customers can still see the SAL name:



56.     Additional examples of Defendants' poor attempts to remove the SAL signage on the exterior of some of the De-Branded Stores are attached hereto as **Exhibit F**.

57.     As of October 17, 2024, Defendants have removed exterior SAL signage at the nearly all De-Branded Stores. As of the same date, Defendants have removed interior SAL signage at the following Stores: Columbus, Ohio – Harrisburg; and Columbus, Ohio – Cleveland Ave.

58.     Despite operating several of the Stores under a different name, Defendants did not make any effort to remove or alter SAL's distinctive trademarks or equipment.

59.    For example, Defendants did not remove shopping carts bearing the SAL name and mark but instead have left them available for customer use.  True and accurate copies of photographs of SAL-branded grocery carts being used at the De-Branded Stores without SAL's permission are attached hereto as **Exhibit G**.

60.    As another example, Defendants did not remove or alter any of the SAL signage bearing SAL's trademarks inside of the Stores. Defendants continue to provide SAL shopping bags to customers and continue to display the SAL trademarks at the entrance of the De-Branded Stores, at cashier stands, at credit card processors, and on food items and customer receipts. True and accurate copies of photographs of Defendants using SAL shopping bags and displaying the SAL trademarks at cashier stands, at credit card processors, and on food items are attached hereto as **Exhibit H**.

61.    Further, Defendants have sold SAL-branded products at the De-Branded Stores without SAL's permission and without a license, including certain of SAL's trademarked private label products.  These trademarked private label products include Pickwell Farms, Kurtz, Tipton Grove, Mantia's, Kiggins, Dish'd, Kaskey's, So-Cheezy, Madeiros, Grissom's, Jade Dragon, J. Higgs, Coburn Farms, Wylwood, Crystal Falls, Ginger Evans, Newbury Mills, Boardwalk, McDaniel's, Farmington, Hargis House, Senora Verde, Nut Some, Save Today, Portside, Marcum, Triumph, Allsoft, Crown Creamery, and Kindle.  True and accurate copies of photographs of SAL's trademarked private label products being offered for sale and sold at the De-Branded Stores without SAL's permission or license are attached hereto as **Exhibit I**.

62.    Customers have expressed confusion due to Defendants' conduct.  For example, in response to SAL's typical social media posts about the Stores, some customers have commented that they are confused and disappointed by their local SAL stores being renamed.

11

63. SAL also recently learned from customers that the De-Branded Stores are no longer accepting SAL gift cards. For example, a non-profit social services organization informed SAL on October 11, 2024 that despite appearing to be a SAL store, one of the De-Branded Stores located in Mansfield, Ohio is no longer accepting gift cards that it purchased from SAL and provided to clients, which further demonstrates customer confusion and harm to SAL's reputation and goodwill in the local community due to Defendants' conduct.

64. Upon information and belief, Defendants have attempted to, or are in the process of, de-branding additional Stores.

65. SAL is the owner of numerous federal registrations for trademarks and service marks issued by the United States Patent and Trademark Office ("USPTO"). Among these registrations are the following, copies of which were obtained from USPTO's database:

| Mark | Reg. No. | Reg. Date | Services |
|---|---|---|---|
| SAVE-A-LOT | 1210074 | Sep. 21, 1982<br><br>*First use: Dec. 15, 1971* | Class 42: Supermarket Services |
| SAVE A LOT | 2815192 | Feb. 17, 2004<br><br>*First use: Jan. 01, 2003* | Class 35: retail supermarket services; and retail store services featuring general merchandise |
|  | 5822845 | Jul. 30, 2019<br><br>*First use: Jul. 20, 2018* | Class 35: retail supermarket and grocery store services |
|  | 2522594 | Dec. 25, 2001<br><br>*First use: Jan. 1978* | Class 35: retail supermarket services |

| | 2813215 | Feb. 10, 2004<br><br>*First use: Jan. 01, 2003* | Class 35: retail supermarket services; and retail store services featuring general merchandise |
|---|---|---|---|
| | 3193809 | Jan. 02, 2007<br><br>*First use: Jan. 01, 2003* | Class 35: retail supermarket services; and retail store services featuring general merchandise |
| SAVE A LOT MARKET | 4288958 | Feb. 12, 2013<br><br>*First use: Jun. 01, 2012* | Class 35: Retail supermarket services; retail store services featuring general consumer merchandise |
| MORNING DELIGHT | 2014280 | Nov. 05, 1996<br><br>*First use: Apr. 07, 1994* | Class 30: frozen ready to eat pancakes, waffles, and French toast, and bakery goods made from dough |
| PICKWELL FARMS | 5,978,907 | Feb. 04, 2020<br><br>*First use: Oct. 31, 2019* | Class 29: frozen, canned, and dried fruits and vegetables |
| KURTZ | 1,785,723 | Aug. 03, 1993<br><br>*First use: May 07, 1987* | Class 30: catsup and mustard |
| KURTZ | 4,877,426 | Dec. 29, 2015<br><br>*First use: May 07, 2009* | Class 30: vinegar and marinades |
| KURTZ | 3,752,338 | Feb. 23, 2010<br><br>*First use: May 07, 2009* | Class 30: Barbecue sauce, relish, Worcestershire sauce, chili sauce, hot sauce, chicken wing sauce, and steak sauce |
| TIPTON GROVE | 6,034,589 | Apr. 14, 2020<br><br>*First use: Aug. 23, 2019* | Class 30: Mixes in the nature of powdered mixes and syrups used in the preparation of iced tea |
| MANTIA'S | 4,231,650 | Oct. 23, 2012 | Class 29: Meatballs and grated parmesan cheese |

| | | | |
|---|---|---|---|
| | | *First use (Class 29): May 27, 2010*<br><br>*First use (Class 30): Oct. 21, 2009* | Class 30: Pizza, pizza sauce, pizza crust mix, pasta sauce, pasta, bread and ravioli |
| KIGGINS | 4,156,039 | Jun. 05, 2012<br><br>*First use: Dec. 20, 2011* | Class 30: Breakfast cereals |
| DISH'D | 5,904,595 | Nov. 05, 2019<br><br>*First use: Jun. 26, 2019* | Class 29: prepared, prepackaged, and frozen entrees and meals consisting primarily of meat, fish, poultry, vegetables, soups, or fruit |
| KASKEY'S | 5,094,420 | Dec. 06, 2016<br><br>*First use: Sep. 01, 1990* | Class 29: Soups and broths |
| SO-CHEEZY | 4,613,829 | Sep. 30, 2014<br><br>*First use (Class 29): Mar. 01, 2011*<br><br>*First use (Class 30): Mar. 01, 2011* | Class 29: snack cheese dip<br><br>Class 30: macaroni and cheese |
| MEDEIROS | 3,769,605 | Mar. 30, 2010<br><br>*First use: Nov. 05, 2009* | Class 29: Olive oil |
| GRISSOM'S | 7,264,585 | Jan. 02, 2024<br><br>*First use: Nov. 10, 2019* | Class 30: Bakery goods; frozen breads; frozen dough |
| JADE DRAGON | 2,290,625 | Nov. 02, 1999<br><br>*First use: Jan. 29, 1999* | Class 30: soy sauce |
| JADE DRAGON | 3,941,974 | Apr. 05, 2011<br><br>*First use (Class 29): Jan. 01, 2010*<br><br>*First use (Class 30): Dec. 01, 2010* | Class 29: frozen entrees consisting primarily of meat, fish, poultry or vegetables<br><br>Class 30: Sauces; frozen entrees consisting primarily of pasta or rice |

| | | | |
|---|---|---|---|
| J. HIGGS | 1,844,575 | Jul. 12, 1994<br><br>*First use (Class 29): Nov. 19, 1987*<br><br>*First use (Class 30): Nov. 19, 1987* | Class 29: snack foods; namely, potato chips<br><br>Class 30: snacks foods; namely, crackers, cheese flavored corn curls, tortilla chips, corn chips, nacho chips, and pretzels |
| COBURN FARMS | 1,441,352 | Jun. 02, 1987<br><br>*First use: Aug. 20, 1986* | Class 29: filled milk and evaporated milk |
| COBURN FARMS | 2,814,194 | Feb. 10, 2004<br><br>*First use (Class 29): Aug. 20, 2002*<br><br>*First use (Class 30): Oct. 12, 2002* | Class 29: yogurt, butter, margarine, cream cheese, sour cream, onion dip and cottage cheese<br><br>Class 30: powdered drink mixes |
| WYLWOOD | 1,572,194 | Dec. 19, 1989<br><br>*First use: Mar. 28, 1989* | Class 29: canned vegetables |
| CRYSTAL FALLS | 5,835,825 | Aug. 13, 2019<br><br>*First use: Nov. 30, 2018* | Class 32: bottled water, drinking water |
| GINGER EVANS | 2,872,853 | Aug. 10, 2004<br><br>*First use: Nov. 14, 2003* | Class 30: cocoa |
| GINGER EVANS | 1,458,586 | Sep. 22, 1987<br><br>*First use: Nov. 20, 1986* | Class 30: flour based mixes |
| GINGER EVANS | 1,503,179 | Sep. 06, 1988<br><br>*First use: Oct. 15, 1987* | Class 30: prepared sugar base topping and bases |
| GINGER EVANS | 3,755,830 | Mar. 02, 2010<br><br>*First use (Class 29): Aug. 17, 2009* | Class 29: Flaked coconut; Fruit-based filling for cakes and pies<br><br>Class 30: Bakery products; Baking soda; |

| | | | |
|---|---|---|---|
| | | *First use (Class 30): Sep. 22, 2009* | Baking-powder; Chocolate chips; Flour; Marshmallows; Sugar |
| NEWBURY MILLS | 5,904,509 | Nov. 05, 2019<br><br>*First use: Aug. 01, 2019* | Class 30: crackers |
| BOARDWALK | 6,019,731 | Mar. 24, 2020<br><br>*First use: Nov. 01, 2019* | Class 32: non-alcoholic carbonated beverages |
| FARMINGTON | 2,206,023 | Nov. 24, 1998<br><br>*First use: Sep. 02, 1996* | Class 29: meats, namely, bacon and sausage |
| HARGIS HOUSE | 2,063,913 | May 20, 1997<br><br>*First use (Class 29): May 08, 1996*<br><br>*First use (Class 30): Jul. 12, 1996* | Class 29:     chili, chili no bean, beef stew, corned beef hash, vienna sausage, and potted meat<br><br>Class 30: sloppy joe sauce, steak sauce, worcestershire sauce, and tamales |
| SENORA VERDE | 2,598,965 | Jul. 23, 2002<br><br>*First use: Mar. 26, 2001* | Class 30: Mexican food items, namely, tortilla chips, salsa, taco shells, taco sauce, taco seasoning [ and Mexican-style meal kits consisting primarily of ] [ tortilla chips, salsa, ] [ taco shells, taco sauce, and taco seasoning ] |
|  | 6,058,404 | May 19, 2020<br><br>*First use: Dec. 28, 2018* | Class 29: peanut butter; peanut butter and grape jelly mixture; snack nuts in the nature of processed nuts and prepared nuts; trail mix consisting primarily of processed nuts, seeds, dried fruit and also including chocolate |
| SAVE TODAY | 4,610,623 | Sep. 23, 2014 | Class 3: Laundry detergent; cleaning preparations |

| | | *First use (all classes): Oct. 01, 2013* | Class 16: Paper towels; toilet tissue<br><br>Class 29: process potatoes and cheese substitutes<br><br>Class 30: pizza snacks; pizza; mixes for bakery goods; pancake mix; pancake syrup; salad dressings; barbecue sauce<br><br>Class 32: fruit juice |
|---|---|---|---|
| PORTSIDE | 1,969,870 | Apr. 23, 1996<br><br>*First use: Mar. 16, 1995* | Class 29: frozen fish |
| PORTSIDE | 1,836,958 | May 17, 1994<br><br>*First use: Jun. 1991* | Class 29: canned fish |
| MARCUM | 2,336,899 | Mar. 28, 2000<br><br>*First use: Aug. 27, 1999* | Class 30: spices and extracts used as flavoring |
| MARCUM | 3,037,912 | Jan. 03, 2006<br><br>*First use: Aug. 27, 1999* | Class 30: spices and extracts used as flavoring not being essential oils |
| TRIUMPH | 2,974,247 | Jul. 19, 2005<br><br>*First use: Apr. 20, 2005* | Class 16: paper towels |
| ALLSOFT | 5,734,971 | Apr. 23, 2019<br><br>*First use: Jun. 05, 2018* | Class 16: toilet paper; facial tissue |
| CROWN CREAMERY | 4,299,105 | Mar. 05, 2013<br><br>*First use: Apr. 23, 2012* | Class 30: Ice cream and ice cream novelties |
| KINDLE | 1,707,561 | Aug. 11, 1992<br><br>*First use: Mar. 05, 1992* | Class 4: charcoal briquettes |

| KINDLE | 1,456,041 | Sep. 08, 1987<br><br>*First use: Aug. 04, 1986* | Class 4: lighter fluid |
|--------|-----------|-----------------------------------------------|------------------------|

True and accurate copies of these registrations are attached hereto as **Exhibit J**.

66.  SAL only authorized Licensee to use its IP pursuant to the terms set forth in the LSAs.  Upon the termination of the LSAs, Defendants were required, among other things, to "[c]ease use of, by advertising or any manner whatsoever, the Marks, including by canceling and terminating the registration for or relating to the Stores as well as the Assumed Name and any similar registration, listing or filing and 'de-branding' the Stores and Premises by removing any signage, décor and color scheme associated with the Save-A-Lot Program or bearing the Marks." Exhibits A–E at § 6(c)(iii).  This included ceasing use of the SAL trademark and the trademarks associated with SAL's private label products, including but not limited to Pickwell Farms, Kurtz, Tipton Grove, Mantia's, Kiggins, Dish'd, Kaskey's, So-Cheezy, Madeiros, Grissom's, Jade Dragon, J. Higgs, Coburn Farms, Wylwood, Crystal Falls, Ginger Evans, Newbury Mills, Boardwalk, McDaniel's, Farmington, Hargis House, Senora Verde, Nut Some, Save Today, Portside, Marcum, Triumph, Allsoft, Crown Creamery, and Kindle.

67.  To date, Defendants have operated, and continue to operate, the De-Branded Stores with SAL IP and SAL's trademarks despite the fact that Defendants do not have a license or SAL's permission to do so.  Therefore, Defendants are falsely holding themselves out to the public as either affiliated with SAL or as an authorized SAL licensee.

68.  Defendants' unauthorized use of SAL IP, including but not limited to its trademarks, service marks, brand identification, trade dress, and trade names, have resulted in injury to SAL's business reputation, loss of its goodwill, and the weakening, tarnishing, and dilution of SAL IP.

69. Moreover, Defendants' customers are mistakenly associating SAL's trademarked private label products with Defendants' "Value Foods Market" de-branded stores, which has resulted in injury to SAL's business reputation, loss of its goodwill, and the weakening, tarnishing, and dilution of SAL IP.

70. Upon information and belief, Defendants have also purchased products from wholesalers other than SAL that are then sold in the De-Branded Stores, which is expressly prohibited by the LSAs. In doing so, Defendants have created a false association between SAL's products and trademarks and the products Defendants sourced from wholesalers other than SAL, further tarnishing the reputation and goodwill associated with SAL's products and trademarks.

71. Defendants' appropriation of SAL's goodwill and reputation associated with the SAL IP is likely to cause confusion or to cause mistake or to deceive, and is causing harm to SAL.

**COUNT I**
**Trademark Infringement Under 15 U.S.C. § 1114 of the Lanham Act**

72. SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73. Defendants' use of SAL's trademarks in connection with Defendants' De-Branded Stores is actually causing confusion, and is likely to continue to cause confusion, mistake and deception among consumers, the public, and trade as to whether Defendants' products and/or services are affiliated with, sponsored by, or endorsed by SAL.

74. SAL's trademarks, as described above, are identical and/or highly similar to the marks being used by Defendants.

75. Defendants' products are identical and/or highly similar to those under SAL's trademarks.

19

76. SAL, on one hand, and Defendants, on the other, are competing grocery stores that are in the same trade channels and have similar classes of purchasers of their respective goods who do (and will continue to) encounter these marks in similar online, brick and mortar, and retail environments.

77. In all respects, SAL's rights in the above-identified trademarks, are prior and therefore superior to those of Defendants.

78. Defendants' actions constitute infringement of SAL's registered marks in violation of the Lanham Act, 15 U.S.C. § 1114(1).

79. Defendants have acted with actual or constructive knowledge of the SAL's trademarks and registrations, and on information and belief, deliberately intended to confuse consumers, or were willfully blind to SAL's rights.

80. Defendants have made and will continue to make substantial profits and/or gains to which they are not entitled.

81. SAL has no adequate remedy at law and is suffering and will continue to suffer irreparable harm and damages as a result of Defendants' acts unless Defendants are enjoined and restrained from using SAL IP.

82. As a direct and proximate result of Defendants' acts, SAL has been materially damaged in an amount not yet determined or ascertainable. At a minimum, however, SAL is entitled to injunctive relief and to an accounting of Defendants' profits, damages, and costs. Given the blatant nature of Defendants' infringement, SAL will be filing a motion for preliminary injunction in the coming days. Defendants' trademark infringement is egregious—Defendants are actively confusing SAL's customers by using *exact copies* of SAL's registered trademarks to sell groceries to SAL's customers under the "Value Foods Market" store name. SAL's need for

injunctive relief is immediate, as Defendants' aggressive infringing conduct is creating substantial and irrevocable harm to SAL's reputation and goodwill in the marketplace. Additionally, the public interest would be greatly served by an injunction, as consumers are being actively confused as to the affiliation between SAL and Defendants.

## COUNT II
### False Designation of Origin and Unfair Competition Under 15 U.S.C. § 1125(a) of the Lanham Act

83. SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

84. As described above, SAL is the owner of numerous federal trademark and service mark registrations issued by USPTO.

85. Defendants have used SAL IP to operate the "Value Foods Market" de-branded grocery stores at the Store Location without SAL's permission. Defendants' actions have been intentional and willful.

86. Defendants' continued knowing and unauthorized use of SAL IP, including but not limited to its trademarks, service marks, brand identification, trade dress, and trade names, in connection with the operation of the "Value Foods Market" de-branded grocery stores is likely to cause confusion or deceive the consuming public as to the affiliation, connection or association of the Defendants' business with SAL, or deceive the consuming public as to the sponsorship or approval of its goods, services or commercial activities by SAL.

87. SAL has no adequate remedy at law and is suffering and will continue to suffer irreparable harm and damages as a result of Defendants' acts unless Defendants are enjoined and restrained from using SAL IP.

88.     As a direct and proximate result of Defendants' acts, SAL has been materially damaged in an amount not yet determined or ascertainable.  At a minimum, however, SAL is entitled to injunctive relief and to an accounting of Defendants' profits, damages, and costs.

## COUNT III
## Common Law Trademark Infringement

89.     SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

90.     Defendants' unauthorized use of SAL IP, including but not limited to its trademarks, service marks, brand identification, trade dress, and trade names, in connection with the operation of the De-Branded Stores is likely to cause confusion or deceive the consuming public as to the affiliation, connection or association of Defendants' business with SAL, or deceive the consuming public as to the sponsorship or approval of its goods, services or commercial activities by SAL.

91.     SAL has no adequate remedy at law and is suffering and will continue to suffer irreparable harm and damages as a result of Defendants' acts unless Defendants are enjoined and restrained from using SAL IP.

92.     By virtue of the Defendants' acts, SAL has been materially damaged in an amount not yet determined, but to be proved at trial.

## COUNT IV
## Unfair Competition

93.     SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

94.     Defendants' unauthorized use of SAL IP, including but not limited to its trademarks, service marks, brand identification, trade dress, and trade names, in connection with the operation of the De-Branded Stores is likely to cause confusion or deceive the consuming

public as to the affiliation, connection or association of Defendants' business with SAL, or deceive the consuming public as to the sponsorship or approval of its goods, services or commercial activities by SAL.

95.     SAL has no adequate remedy at law and is suffering and will continue to suffer irreparable harm and damages as a result of Defendants' acts unless Defendants are enjoined and restrained from using SAL IP.

96.     By virtue of the Defendants' acts, SAL has been materially damaged in an amount not yet determined, but to be proved at trial.

**COUNT V**
**Deceptive Trade Practices**
**Ohio Revised Code § 4165.02**

97.     SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

98.     Defendants' acts constitute deceptive trade practices in violation of the Ohio Deceptive Trade Practices Act, Ohio Revised Code § 4165.02.

99.     Defendants' conduct is causing immediate and irreparable harm and injury to SAL, and to its goodwill and reputation, and will continue to both damage SAL and confuse the public unless enjoined by this court. SAL has no adequate remedy at law.

100.    SAL has suffered injury as a result of Defendants' unfair competition and/or unfair and deceptive trade practices.

101.    SAL entitled to, among other relief, injunctive relief and an award of actual damages, reasonable attorneys' fees, and costs of the action, together with prejudgment and post-judgment interest.

**COUNT VI**
**Preliminary and Permanent Injunctive Relief**

102. SAL hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103. There is a substantial likelihood that SAL will prevail on the merits of its claims.

104. SAL will suffer immediate irreparable injury absent injunctive relief.

105. The requested injunction will not cause substantial harm to third parties.

106. It is in the public interest to grant SAL's injunctive relief sought.

107. SAL requests a preliminary and permanent injunction as follows:

    a. Enjoining Defendants and their agents, affiliates, employees, and all persons in concert or participation with them from directly or indirectly (i) infringing SAL's intellectual property, including but not limited to its trademarks, trade dress, trade name, and logos; (ii) using, promoting, marketing, or advertising SAL's trademarks in connection with any Store that is no longer being operated as a SAL-branded store; and (iii) from continuing any and all of the acts of unfair competition and unfair business practices alleged herein.

### PRAYER FOR RELIEF

WHEREFORE, SAL respectfully requests that this Court:

    A. Find that the Defendants have infringed SAL's trademarks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

    B. Grant SAL preliminary and permanent injunctive relief restraining the Defendants from infringing SAL's intellectual property, including SAL's trademarks, trade dress, trade name, or logos;

C.   Order Defendants to pay SAL damages sustained in consequence of such trademark infringement, trebled as provided by law, and to account for all gains, profits and advantages derived by Defendants from such trademark infringement;

D.   Order Defendants to pay SAL the costs of this action and reasonable attorneys' fees, as provided for in Section 35 of the Lanham Act, 15 U.S.C. § 1117;

E.   Order Defendants to pay SAL attorneys' fees pursuant to Ohio Revised Code § 4165.02;

F.   Order that Defendants, including all directors, officers, partners, agents, servants, employees, representative, and attorneys, and all person in active concert or participation with them, be preliminarily and permanently enjoined from otherwise competing unfairly with SAL through acts of trademark infringement;

G.   Enter judgment for SAL against Defendants on all of the foregoing counts;

H.   Enter an award of damages to SAL in an amount to be proved at trial; and

I.   Award SAL any such other and further relief as this Court may deem proper and just.

Respectfully submitted,

**THOMPSON HINE LLP**

*/s/ Jonathan S. Hawkins*
Jonathan S. Hawkins (#0082860)
Discovery Place
10050 Innovation Dr. #400
Miamisburg, OH 45432
(937) 443-6860 (telephone)
(937) 443-6635 (facsimile)
Jonathan.Hawkins@ThompsonHine.com

John B. Kopf (#0075060)
41 South High Street
Suite 1700
Columbus, Ohio 43215
(614) 469-4743
(614) 469-3361 (facsimile)
John.Kopf@Thompsonhine.com

Ned Babbitt (#0101610)
312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
(513) 352-6700 (telephone)
(513) 241-4771 (facsimile)
Ned.Babbitt@ThompsonHine.com

**ARMSTRONG TEASDALE LLP**

Richard L. Brophy (*pro hac vice* forthcoming)
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621-5070 (telephone)
(314) 621-4779 (facsimile)
rbrophy@atllp.com

Michael W. Carwin (*pro hac vice* forthcoming)
100 North Riverside Plaza
Chicago, IL 60606
(312) 516-5625 (telephone)
(312) 312-419-6928 (facsimile)
mcarwin@atllp.com

*Counsel for Plaintiff Moran Foods, LLC*
*d/b/a Save-A-Lot Ltd.*