# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO

MORAN FOODS, LLC            )      Case No. 2:24-cv-04080-ALM-CMV
d/b/a Save-A-Lot, Ltd.           )

                           )     Judge Algenon L. Marbley

          Plaintiff,         )

                           )     Magistrate Judge Chelsey M. Vascura

          v.                     )

                           )

SUNSHINE STORES, LLC, *et al.*    )

                           )

          Defendants.       )

## DEFENDANTS' SUGGESTION OF STAY

Defendants submit the within Suggestion of Stay and notifies this Court and the Plaintiff that an Order Appointing Receiver over the assets and operations of Sunshine Stores, LLC was entered on February 12, 2025 in the case captioned *Moran Foods, LLC v. Sunshine Stores, LLC*, Franklin Common Pleas Court, Case No. 23CVH05-3574. See attached Receiver Order.

The Receiver Order provides for a Stay and Injunction against the litigation or enforcing of any suit against Sunshine Stores, LLC, stating in relevant part:

### STAY AND INJUNCTION

12.     Except for where there is leave of the Court, during the pendency of the receivership ordered herein, all creditors other than utility companies governed by PUCO, claimants, political entities, parties in interest, sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations are enjoined and stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, or in the name of the Company, the Receiver, receivership assets, or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

         a.     Commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

Pursuant to the Receiver Order, Defendants suggest that this matter be stayed and placed on inactive status.

Respectfully submitted,

*/s/ Joseph R. Spoonster*
Joseph R. Spoonster (#0070863)
John W. Becker (#0065491)
Nicholas J. Horrigan (#0087345)
HARPST BECKER LLC
1559 Corporate Woods Parkway, Ste. 250
Uniontown, OH 44685
jspoonster@harpstbecker.com
jbecker@harpstbecker.com
nhorrigan@harpstbecker.com
(330) 983-9971
(330) 983-9981 (fax)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed this 17th day of February, 2025 using the Clerk of Court's electronic filing system, which by its operation will send and serve notice of this filing to all parties that have entered an appearance in this matter. A service copy has also been provided by email upon the following:

Aaron Firstenberger, Esq.
acf@columbuslawyer.net
Counsel for Receiver

*/s/ Joseph R. Spoonster*
Joseph R. Spoonster (#0070863)

0H178 - G7

## IN THE COURT OF COMMON PLEAS
## OF FRANKLIN COUNTY, OHIO

| | | |
|---|---|---|
| **MORAN FOODS, LLC,** | : | CASE NO. 23CVH05-3574 |
| | : | |
| Plaintiff, | : | JUDGE LYNCH |
| | : | MAGISTRATE HUNT |
| v. | : | |
| | : | **ORDER APPOINTING** |
| **SUNSHINE STORES, LLC,** | : | **RECEIVER** |
| | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court upon Plaintiff Moran Foods, LLC's ("Moran" or "Plaintiff") *Motion for Emergency Appointment of Receiver*, as supplemented on October 16, 2024 (the "Motion") of Sunshine Stores, LLC, an Ohio limited liability company ("Sunshine") or ("Company"). The Motion requests that a Court-appointed Receiver be appointed for the business operations and assets of Sunshine so as to prevent its assets and value from being dissipated during the pendency of the litigation and prevent irreparable harm to Plaintiff's intellectual property and other rights licensed by Plaintiff to Sunshine so as to allow them to operate as "Save-A-Lot" branded stores. The Court referred the Motion to Magistrate Jennifer Hunt (the "Magistrate") who heard testimony and admitted into evidence exhibits, each as referenced in the Magistrate's decision on the Motion, filed on February 5, 2025 (the "Decision").

In adopting the Decision, the Court **FINDS** and **CONCLUDES** that:

A.    This Court has subject matter jurisdiction to adjudicate the underlying controversy, and venue is proper based on Sunshine's principal place of business, which is located in Franklin County, Ohio at 5195 Hampsted Village Center Way, New Albany, OH 43054.

B.    The Decision is supported with competent, credible, and admissible evidence and is hereby adopted as this Court's judgment. Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Decision.

C.     Pursuant to Ohio Revised Code Sec. 2735.01, R.C. § 2735.02, and Loc. R. 66, the relief requested in the Motion is appropriate, and the immediate appointment of a Receiver for the Assets (defined below) of Sunshine Stores, LLC is proper and necessary to protect the assets of the Company.

D.     The proposed receiver, Myron Terlecky, is experienced and qualified to act as receiver in this matter.

E.     The requirements for the appointment of a receiver as set forth in the Ohio Revised Code have been met, including the requirement for various disclosures related to the proposed receiver.  The appointment of a receiver is an appropriate and legally correct remedy in this matter, and it is necessary to appoint a receiver to avoid irreparable injury to Plaintiff and other creditors of Sunshine.

F.     There is no just reason for delay with respect to the matters contained in this order. It is therefore **ORDERED**, **ADJUDGED** AND **DECREED** as follows.

1.     The proposed relief requested is granted. Given the immediate nature of the relief required, this order shall be effective in accordance with Civ. R. 53(D)(4)(e)(ii).

2.     Myron Terlecky, Esq., who is not a party, attorney for any party, or interested person in this matter (the "Receiver"), is **immediately appointed** as Receiver of all the Assets of Sunshine Stores, LLC, and is authorized to engage Aaron C. Firstenberger, and Strip, Hoppers, Leithart, McGrath & Terlecky Co. LPA as legal counsel for the Receiver.  The fees of the Receiver and counsel shall be subject to review by the Court.  The Receiver is required to file with the Clerk of this Court a bond in the amount of **$25,000.00** to assure the full and faithful performance of his obligations herein.

3.     The purpose of this receivership is to preserve the value of the Assets, including, to the extent financially prudent, the business operations of Sunshine, and to continue the operations

2

of Sunshine during the pendency of this litigation, or until further order of this Court; to prevent improper diversion of funds or other assets, extraordinary or unnecessary expenditures or loss of funds or other assets. Notwithstanding the foregoing, in the event that the Receiver determines closure of a segment of Sunshine's operations is advisable, upon further Order of the Court, he shall be authorized to do so. The Court expressly reserves the right, upon motion of a party, or upon its own volition to amend the scope of this receivership so as to provide for the liquidation of Sunshine for the benefit of its creditors including the Plaintiff to the extent so ordered by the Court.

## POWERS OF RECEIVER

4. Without limiting the generality of the foregoing, the Receiver has the power and authority described in Section 2735 of the Ohio Revised Code and Local Rule 66.05, including the authority and power over the following:

a. **Custody and Control.** The Receiver will take exclusive custody and control of the Company, including possession of all the funds, property, mail, and other assets of, in the possession of, or under the control of the Company (the "Assets"). The Assets of the Company include without limitation the following: all real property, leaseholds, inventory, intellectual property, personal property, equipment, inventories, accounts, Revenues (as defined below), general intangibles, investment property, instruments, documents, bank accounts and amounts therein and any other property of any nature whatsoever of Company whether held by the Company or jointly with another, now or hereafter in the possession of, in transit to or from, or under the custody or control of the Company, and the proceeds and products of the foregoing in whatever form the same may be, wherever located, now existing and hereafter arising or coming into existence. The Receiver may take all steps necessary to secure the business premises of the Company and any of the Assets, wherever located. The Company and its agents, including Mr. Chaudhry, shall cooperate with the Receiver to ensure the Receiver identifies and assumes full control of all the Assets.

b. **Protect and Preserve Operations and Assets.** The Receiver may: (i) take all emergency actions necessary in his judgment to preserve, protect, and manage the Company and all Assets in order to preserve their value; (ii) pay all customary wages, utilities, expenses or other obligations to suppliers or servicers in the ordinary course of business, including obligations incurred prior to commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships or otherwise preserve the Company and its value, while protecting creditors'

3

interests; (iii) make repairs necessary to maintain the Assets, provided, however, that the Receiver shall not make any improvements and/or repairs having a cost of over $10,000.00 without Court approval; (iv) terminate employment of any attorney, agent, officer or employee of the Company, and/or limit or re-define their duties, increase or decrease their compensation, decrease or eliminate distributions to members, or take other steps consistent with the Receiver's business judgment; (v) apply for, obtain, renew and keep in full force and effect all required licenses, permits, consents and approvals; and (vi) take any and all actions not specifically enumerated herein that are, in the Receiver's judgment, necessary to properly and adequately manage, control, operate, maintain, and protect the Assets and the Stores. The Receiver is authorized to accept advances from the Plaintiff for operating expenses, working capital, or improvements. All advances to the Receiver by the Plaintiff for the benefit of the Assets, including any advances for working capital or improvements, and any other costs and expenses incurred by the Receiver under this Order, shall be deemed protective future advances under the Plaintiff's security agreements with the Plaintiff. Any such protective future advances shall be fully secured by the Plaintiff's priority liens and security interests against the Receivership Property and shall be entitled to administrative priority to repayment. Without derogating from the foregoing, any and all funds advanced by the Plaintiff to the Receiver pursuant to this Order shall: (i) be deemed made pursuant to contract; (ii) be added to the amount of the indebtedness owed by the Company to the Plaintiff; (c) be deemed secured by the liens and security interests in favor of the Plaintiff on the Assets to the same extent and with same priority as the other indebtedness secured by all existing liens and security interests in favor of the Plaintiff; and (d) accrue interest at the highest rate chargeable under any existing loan between the Company and the Plaintiff. All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of any and all other claims against the Receivership Property (except for taxes and assessments having first priority as a matter of law, or administrative claims of the Receiver) or proceeds of either of them. Notwithstanding the foregoing, the Plaintiff shall have the right to loan funds to the Receiver, as receiver, on terms which are different that the terms under any existing loan between the Company and the Plaintiff. Nothing in this section shall be construed to require the Plaintiff to advance or loan funds to the Receiver for any reason.

c. **Collection of Revenues**. The Receiver will collect the profits, rents, revenues, insurance proceeds, and all other income of any nature whatsoever from the Assets of the Company (collectively, the "Revenues"), and pay from the Revenues all Receivership Expenses (as defined below). The Receiver has the authority to receive and endorse as necessary, present for payment and/or collect any check, money order, credit card account or other form of payment payable to either the Company or the Receiver and deposit all Company funds into a segregated Receiver account or the Company's current account(s), subject to appropriate controls. The Receiver may assume control and/or change existing billing, cash management, banking, and payroll accounts, providers, routing, and servicers associated with the Company, the Stores, and the Assets.

d. **Leases And Executory Contracts**. Subject to the Court approval, the Receiver may cancel any leases or executory contracts of the Company if the performance of same would not be beneficial to the receivership estate. Nothing in this provision affects any rights of parties to rejected executory contracts or leases to make a claim for damages

4

arising out of such rejection. The Receiver is permitted to assign leases and executory contracts as permitted by the terms of such contracts or leases and subject to Court approval. The Receiver is further empowered to execute, cancel, or modify lease agreements or extensions of existing leases after consultation with Plaintiff.

e. **Receivership Expenses**. The Receiver may incur and pay out of the Assets such expenses and obligations coming due after the date of the Receiver's appointment as may be necessary or appropriate for such maintenance, protection, preservation or operation of the Assets, or necessary expenses in carrying out the directions of this Order (collectively, the "Receivership Expenses"). Receivership Expenses include, without limitation, all taxes and assessments, insurance premiums for property, casualty, liability and other essential insurance thereon; utility expenses; operating expenses; lease obligations; and compensation for the Receiver and any professionals. The payment of Receivership Expenses in the ordinary course is hereby authorized, and the Receiver is further authorized to execute such agreements with Plaintiff as may be appropriate in his business judgment to ensure continued delivery of Store inventory, including the granting of new or replacement liens on the Assets (or their products and proceeds) in favor of Plaintiff to ensure such continued inventory financing.

f. **Pre-receivership Liabilities**. The Receiver is not liable for any expenses or accounts payable which were incurred prior to the effective date of this Order. Notwithstanding the foregoing or anything that may be construed to the contrary, the Receiver shall use best efforts to pay those expenses and accounts payable incurred in the normal and ordinary course of business prior to this Order (including, without limitation, tax, lease, payroll, employee benefit, utility, and vendor obligations) to the extent that the payment of any such pre-existing expense or account payable is necessary or desirable for the preservation of the Assets. This section shall have no application to claims or amounts payable to utility providers governed by the Public Utilities Commission of Ohio ("PUCO").

g. **Bank Accounts.** The Receiver may establish a new bank account(s) or may, at his discretion, continue the use of accounts currently in existence. The Receiver will deposit all funds of the receivership estate in such designated accounts and will make all payments and disbursements from the receivership estate from such accounts. Funds of the receivership are further authorized to be held in the trust account of any legal professional employed by the Receiver.

h. **Segregation of Assets and Funds.** The Receiver will use his best efforts to segregate the income, assets, and sale proceeds of each Store, and further segregate the claims to ensure that the liabilities of one Store do not dilute creditor claims against another. Notwithstanding the foregoing, nothing prevents the Receiver from allocating costs in a reasonable manner between the entities, including allocating all or substantially all costs to the entity with the most assets. Further, no act or allocation of income or assets by the Receiver shall prejudice the rights of any secured creditor or party to this proceeding from

5

asserting or seeking marshaling, substantive consolidation, alter ego, surcharge, subordination, or similar theories and remedies.

i.     **Investment of Funds.** The Receiver may invest any excess cash in one or more interest-bearing accounts with a state or national financial institution, so long as all amounts (including, without limitation, accrued interest thereon) in such account(s) are insured by the Federal Deposit Insurance Corporation.

j.     **Sale of Assets.** Upon further motion of the Receiver or a party to this matter, the Court may expand the scope of the receivership, and authorize the Receiver to liquidate the Assets for the benefit of the creditors. However, at present, this Order shall permit the Receiver (a) to sell the Company's inventory and stock in trade in the regular course of business, and (b) in the event an immediate closure of a given Store is in the best interests of the receivership estate, to sell, outside the ordinary course of business and without prior Court approval, where advisable and with Plaintiff's written consent, a Store's *de minimis* assets which are, in the Receiver's judgment (after consultation with Plaintiff) producing no value or benefit to the Company. The Receiver shall give as much notice as practicable to Plaintiff prior to the closure of any Store.

k.     **Protection of Intellectual Property and Operations.** During the course of the receivership and the sale efforts by the Receiver, the Receiver will use commercially reasonable efforts to protect the intellectual property and operations of Plaintiff and the Company.

l.     **Employment of Professionals.** The Receiver may choose to engage, upon notice and Court approval, professionals as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order, on the terms and conditions as the Receiver determines to be in the best interests of the receivership estate. Compensation to professionals employed by the Receiver will not be paid without Court approval, except with leave of the Court, but will be paid first out of the Assets in conjunction with the payment of the Receiver's fees as administrative expenses. The Receiver shall be permitted to employ counsel as set forth above and further outlined below. The Receiver is authorized to engage a retail management company to handle day-to-day operations of the Company Stores and business and such accountants or financial professionals as he may deem appropriate, and may compensate same without further leave of Court after approval of their engagement and after due consultation with Plaintiff, with all fees and charges subject to the Receiver's reasonable business judgment. The Receiver may engage Plaintiff and/or employees of Plaintiff to assist and manage the day-to-day operations of the Company Stores and business and may enter into a management agreement with Plaintiff and/or employees of Plaintiff on terms acceptable to the Receiver in the Receiver's business judgment.

6

m. **Lawsuits and Settlements.** The Receiver may initiate, defend, or take any other action in law that the Company may have, including (i) any claims that would normally be reserved for creditors of a company to recover assets fraudulently transferred by the Company and (ii) any claims that would normally be reserved for shareholders of a company to assert breaches of fiduciary duty against current or former directors and officers of the Company. The Receiver may further settle any claims of the Company or against the Company in his reasonable business judgment after consultation with Plaintiff and without Court approval.

n. **Books.** The Receiver shall maintain complete books, records, and financial reports of the income and expenses and all others appropriate records associated with this case, the Assets and the Stores.

o. **Receivership Tax Returns.** The Receiver and Company shall cooperate with one another relative to the preparation and filing of any tax returns related to the receivership estate as may be required at law. The Company shall have ultimate responsibility for ensuring that the tax returns are filed excepting that, at the option of the Receiver, the Receiver may assume that responsibility.

p. **Other Actions.** The Receiver may undertake all other actions, including, without limitation, executing documents on behalf of the receivership estate that are in his judgment, necessary or appropriate to accomplish the directions of this Order.

## DELIVERY TO RECEIVER

5. Any person or entity served with a copy of this order shall, immediately or within such time as permitted by the Receiver in writing, cooperate with the Receiver in the transition of the management of the Company and Assets and shall deliver or make available to the Receiver:

a. Possession and custody of the Assets and all other assets of the Company in the possession of, under the control of, or held in the name of the Company;

b. Possession and custody of documents of the Company, including but not limited to, all books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including monthly statements, canceled checks, records of wire transfers, and check registers), credit card records and information, vendor lists, title documents and other papers, wherever located, as the Receiver deems necessary for the proper administration, management or control of the receivership estate;

7

  c.  All keys, computer passwords, entry codes, PIN numbers and combinations to locks necessary to gain or to secure access to any of the assets or documents of the Company, including but not limited to, access to the Company's business premises, means of communication, accounts, computer systems, or other property;

  d.  Information identifying the accounts, employees, properties or other assets or obligations of the Company;

  e.  All pending contracts or bids for contractor work;

  f.  All insurance policies and pending claims;

  g.  All documents pertaining to safety and environmental laws, together with all reports, surveys, inspections, orders, citations, warnings and notices regarding the same;

  h.  Site plans, surveys, specifications, floor plans, drawings, measurements, related to any Assets;

  i.  All technical manuals related to any Asset; and

  j.  Such other records related to Assets as may be reasonably requested by the Receiver.

6.  Except as permitted by the Receiver under this Order, the Company and its employees and agents, including owners or employees and agents thereof, are prohibited from removing any Assets, and are prohibited from diverting any Revenues from the Company or related to the Assets.

## COOPERATION WITH RECEIVER

7.  The Company, its employees, current and former owners, agents and assigns, and all other persons or entities served with a copy of this Order shall cooperate fully with and assist the Receiver in the performance of his duties, and shall take no action that impedes or interferes with the execution of the Receiver's duties. This cooperation and assistance includes, but is not limited to, providing any information to the Receiver that the Receiver deems necessary to exercise the authority and discharge the responsibilities of the Receiver under this order. The Company shall add the Receiver as an additional insured loss payee on all insurance relating to the operation

and management of the Assets including, but not limited to, fire, extended coverage, auto and van coverage, property damage, liability, fidelity, errors and omissions, and workers compensation, and modifying the policies if deemed appropriate by the Receiver. The Company and its employees, agents, and representatives are prohibited from canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Assets.

## BOND AND LIMITED LIABILITY OF RECEIVER

8. The Receiver will file with the Clerk of this Court a bond in the amount of **$25,000.00** to ensure the full and faithful performance of his obligations herein.

9. In carrying out their duties as set forth herein, the Receiver and his agents are entitled to exercise their authority in performing their duties under this Order in their own sound business judgment. The Receiver and his agents and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, and/or failure to comply with this order.

10. No expenses, obligations, liabilities, or risks incurred by the Receiver in connection with the maintenance, preservation or operation of the Assets or in the performance or fulfillment of his duties are the personal expense, obligation, liability, or risk of the Receiver; rather, they are exclusively the expense, obligation, liability, and risk of the receivership estate.

11. Notwithstanding anything to the contrary, the Receiver is not liable for the payment of taxes of any kind (except real estate taxes), assessment, goods or services, incurred prior to the date of this Order.

## STAY AND INJUNCTION

12. Except for where there is leave of the Court, during the pendency of the receivership ordered herein, all creditors other than utility companies governed by PUCO, claimants, political

entities, parties in interest, sheriffs, marshals, and other officers, and their respective attorneys, servants, agents, and employees, and all other persons, firms, and corporations are enjoined and stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, or in the name of the Company, the Receiver, receivership assets, or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

   a.   Commencing, prosecuting, litigating or enforcing any suit, except that actions may be filed to toll any applicable statute of limitations;

   b.   Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, assets of the Company or any property claimed by the Company, or attempting to foreclose, forfeit, alter or terminate any of the Company's interests in property, whether such acts are part of a judicial proceeding or otherwise;

   c.   Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon any property, wherever located, owned by or in the possession of the Company, the Receiver, or any agent of the Receiver;

   d.   Doing any act or thing to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver or their duties, or to interfere with the exclusive jurisdiction of this Court over the property and assets of the Company.

13.   Other than the Receiver, no person holding or claiming any position of any sort with the Company shall possess any authority to act by or on behalf of the Company or its Assets, except as authorized by the Receiver.  All persons, including but not limited to Sunshine and its respective directors, shareholders, members, managers, officers, agents, servants, employees, attorneys, representatives, subsidiaries, affiliates, and all persons in active concert or participation with them, are restrained and enjoined from in any way impairing or interfering with the operation, management, or wind down of the Stores or the Company or in any way disturbing or disposing of the Assets and from filing or prosecuting any actions or proceedings which involve the

Company or which affect this receivership estate, specifically including any proceeding initiated pursuant to the United States Bankruptcy Code, except with the prior permission of this Court, in which case the Receiver shall be entitled to prior notice and an opportunity to be heard. If a bankruptcy petition is filed, the Receiver shall become, and shall be empowered to administer this estate and the Company as a debtor in possession, with all powers and duties provided to a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Without leave or further order of this Court, no person other than the Receiver is authorized to seek relief under the Bankruptcy Code for the Company.

**RECEIVER'S REPORTS TO THE COURT AND COMPENSATION**

14.     The Receiver is directed to file with this Court a First Report and Plan not later than 60 days after entry of this Order, and with it, an inventory of the Assets, all of which shall be served on the parties to this action. The Receiver will submit subsequent reports **at least every 120 days thereafter** setting forth the Receiver's actions (the "Receiver's Report"). The Receiver is not required to file backup financial information such as copies of bank statements with the Court but will make such information available to Plaintiff, or, upon request, other parties or the Court. The Receiver will summarize in his Receiver's Reports to the Court receipts, disbursements and other matters regarding the performance of his duties. The Receiver will further provide any monthly reporting to any secured creditors as they may reasonably request.

15.     The Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual and reasonable out-of-pocket expenses incurred by them for those services authorized by this Order. Fees of the Receiver and any professionals will be paid ahead of all other administrative expenses out of the assets of the receivership estate, notwithstanding any lien rights of creditors.

11

16.     In conjunction with each Receiver Report and as allowed by local rules, the Receiver may file with the Court and serve on the parties periodic requests for the payment of compensation of the Receiver or any hired professionals.  The requests for compensation will itemize the time and nature of services rendered by the Receiver and all personnel hired by the Receiver in increments of no greater than one-tenth of an hour.  The Receiver and all personnel hired by the Receiver will not increase the hourly rates used as the basis for such fee applications without prior approval of the Court.

17.     The Receiver will be compensated on an hourly basis at the rate of $300/hr.  The Receiver's periodic reports shall include an itemized statement setting forth the compensation paid to the Receiver for the services rendered and costs incurred by it as receiver during the preceding three months, reflecting the dates of service, time spent, and the nature of the services rendered and costs incurred.  The Receiver's compensation shall be paid first from the Revenues from the Receivership Property, and next, by the Plaintiff as a protective advance, but only to the extent that the Revenue is insufficient to pay the Receiver's compensation.  The Receiver shall be permitted to deduct its fees directly from the Assets and Revenue or other proceeds thereof.

18.     The Receiver and the Assets shall not be bound by any existing brokerage or listing agreement affecting the Assets or any part thereof.  The Company is enjoined from retaining a brokerage firm for the Assets otherwise interfering with the Receiver's retention of a brokerage firm for the Assets.  To the extent that the Receiver seeks to hire a broker or auctioneer to sell the assets of the Company, the compensation arrangement will be pre-approved by the Court. Nothing in this paragraph will prohibit the Receiver or any of his affiliates from serving as broker or auctioneer, provided that the compensation is approved and the Receiver does not charge his hourly rate for matters traditionally included in broker and auctioneer commissions (i.e. marketing efforts and preparing items for sale).

12

19.     The Receiver is authorized to employ the law firm of Strip Hoppers Leithart McGrath & Terlecky Co., LPA, at the hourly rates as set forth in the Motion.

20.     The Receiver shall, during the pendency of this action, have the right to apply to this Court for further instructions or directions.

## PROOFS OF CLAIM AND NOTICE

21.     Until such time as the Receiver determines that moneys are available for distribution to creditors, the Receiver is relieved from administering any claims process amongst creditors as referenced in Local Rule 66, but shall make all proper and appropriate disclosures to any creditor who may inquire in the interim.  In the event that moneys are available to creditors, the Receiver will advise the Court and request that the Court set a deadline and enact other procedures for the submission of claims and the claims process.  The Receiver shall thereafter review and make a recommendation to the Court as to treatment of the claims and distribution among the creditors.

22.     To limit administrative expense, the Receiver is not obligated to serve each and every pleading, motion, or other filing upon all unsecured creditors, but will serve all secured creditors and landlords, and any person or entity or who has filed an appearance in the case, has otherwise specifically requested service of all matters, or is specifically impacted by the filing.  In the event any deadline for filing proofs of claims is established pursuant to Paragraph 21 herein, the Receiver will serve upon all creditors any motion, application or other filing which recommends distribution of funds or treatment of creditor claims, and same will be permitted reasonable opportunity to respond.  After expiration of the deadline for filing proofs of claim established by the Court, any creditor that has not filed a proof of claim is no longer entitled to notice or service of any type, and the Receiver need not serve them.

13

## EFFECTIVE DATE AND RETENTION OF JURISDICTION

23.     This Order and the injunction contained within will be in full force and effect as of the date it is entered by the Clerk of this Court, and the Receiver will be empowered pursuant to this Order upon the filing of the Receiver's oath and bond.

24.     This Order and the Receiver's appointment will remain in full force and effect until further order of this Court.  This Court retains jurisdiction of this matter for all purposes.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that the Receiver's appointment shall remain in effect subject to further order of this Court.

THERE BEING NO JUST REASON FOR DELAY, THIS IS A FINAL, APPEALABLE ORDER.

**IT IS SO ORDERED.**

_____                    Signature page attached._____
DATE                                                    JUDGE JULIE M. LYNCH

Copies to all parties and/or counsel of record.

Franklin County Court of Common Pleas

**Date:**             02-12-2025

**Case Title:**       MORAN FOODS LLC -VS- SUNSHINE STORES LLC

**Case Number:**      23CV003574

**Type:**             APPOINTMENT OF RECEIVER


It Is So Ordered.

*/s/ Judge Julie M. Lynch*

/s/ Judge Julie M. Lynch